UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANEE BURRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-895(CEJ) |
| ) | |
| MICHAEL ASTRUE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On November 28, 2005, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and an application for supplemental security income disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (Tr. 193-195, 190-192). Plaintiff's application was denied on January 26, 2006. (Tr. 89-90). On February 23, 2006, plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 130). A hearing was held on June 27, 2007. (Tr. 53-88). The ALJ issued an unfavorable decision on August 29, 2007. (Tr. 91-111). The Appeals Council granted plaintiff's request for review on September 25, 2008. (Tr. 112-116). Plaintiff testified before an ALJ on November 25, 2008. (Tr. 21-52). The ALJ issued a decision denying plaintiff's claim on December 24, 2008. (Tr. 7-20). The Appeals Council denied plaintiff's request for review on May 29, 2009. (Tr. 1-3).

The Commissioner moved for remand in federal court. This Court entered an order remanding plaintiff's claim to the Commissioner on December 22, 2009. (Tr. 621-625). Plaintiff testified before an ALJ on June 22, 2010. (Tr. 592-620). The ALJ denied plaintiff's claim on July 8, 2010. (Tr. 571-582). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

At the time of the hearing on June 22, 2010, plaintiff was forty-six years old. He was 6'2'' tall and weighed 340 pounds. He owned a house that he lived in with his nephew.

Plaintiff was unemployed and had not worked since October 2004 when he was laid off from his computer operator job. Plaintiff had attended college and was "eight to ten classes short of graduating" when he was forced to drop out following a stroke in 2001. (Tr. 598) Plaintiff testified that he attempted to return to school, but his memory and concentration problems prevented him from completing his studies. He testified that these problems also prevent him from obtaining a job. Plaintiff testified that he can concentrate on something for about five minutes. Because of his short-term memory problems he must read material multiple times and repeat it to himself in order to remember it.

Plaintiff testified that the entire right side of his body is numb as a result of the stroke, and that he was told that he has a hole in his heart. He testified that he can walk only two blocks before becoming short of breath and he is unable to stand for longer than ten minutes. Sitting did not pose a problem for him. The numbness in his right hand impairs his ability to grasp objects and fasten buttons. He was able to lift 60 pounds.

Plaintiff suffered from schizoaffective disorder which he testified was "okay, as long as I take my medication." (Tr. 598). Plaintiff testified he took Geodon [1] daily and that he was compliant with taking his medications. Plaintiff also took Coumadin[2], a blood thinner, and Celexa[3] for depression. His blood pressure was controlled by medication. Plaintiff has not experienced any side effects from the medications he took.

Plaintiff testified that he washes dishes, cooks, shops, and does laundry. Plaintiff did not have any problems with bathing or dressing himself. He was also able to drive a car. In addition to household chores, plaintiff went to a gym twice a week and to church at least once a week. (Tr. 601-602). With regard to income, plaintiff received food stamps, Medicaid, and rent from his nephew. (Tr. 602).

In addition to plaintiff's testimon, the ALJ heard from James E. Israel, a vocational expert. Mr. Israel opined that an individual with plaintiff's age, education level, past work experiences, and limitations to performing medium exertion level work could perform jobs as an inspector, assembler, and bulk packer. (Tr. 613-614). Mr. Israel also opined that an individual limited to a one- or two-step task could perform the same jobs. (Tr. 614).

### III. Medical Evidence

---

[1] Geodon (ziprasidone hydrochloride) is a psychotropic drug indicated for the treatment of major depressive disorder. See Phys. Desk Ref. 1801-03 (61st ed. 2007).

[2] Coumadin (Warfarin) is used to prevent blood clots from forming or growing larger in your blood and blood vessels. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000634/

[3] Celexa, or Citalopram, is prescribed to treat depression. www.nlm.nih.gov/medlineplus/druginfo/meds (last visited on Nov. 6, 2009).

3

The plaintiff was first seen by Joel Posener, M.D. in October 2000 at the Metropolitan Psychiatric Rehabilitation Center.  (Tr. 298). The medical reports indicate that plaintiff had a eleven year history of paranoid schizophrenia.  Plaintiff complained of an increase in his auditory hallucinations.  (Tr. 298).  Specifically, plaintiff stated that he believed that the radio and television were talking to him.  Plaintiff also believed that "other people [were] trying to hurt him or his family."  (Tr. 300).  After an examination, Dr. Posener noted that plaintiff appeared to be slightly depressed and anxious.  However, he did not appear to be under any apparent stress. (Tr. 298).  Dr. Posener also noted that plaintiff was doing very well on medications he had previously received. Plaintiff was alert and oriented to time, person, and place.  (Tr. 298). Plaintiff was discharged on October 11, 2000 to Depaul Hospital.  (Tr. 299).

In September 2001, plaintiff was admitted to  St. Mary's Health Center after being found in a pool of vomit in his apartment. (Tr. 310). Plaintiff had right-sided weakness and was in a delirious state.  At the time, plaintiff was taking Zyprexa[4].  (Tr. 316).  Robert Wright, D.O., evaluated plaintiff and performed a CT scan, an MRI, and an  MRA (magnetic resonance angiogram) of plaintiff's head.  The MRI and MRA results indicated that plaintiff had suffered a stoke.  (Tr. 310).  Plaintiff was diagnosed with cerebrovascular accident with right-sided hemiparesis, hypertension, schizophrenia, and degenerative joint disease.   (Tr. 311).  Plaintiff was referred for a neuropsychological assessment.  (Tr. 382).

Plaintiff was seen on November 27, 2001 by Gerard Erker, Ph.D. (Tr. 382).  Dr. Erker assessed plaintiff's nuerocognitive functioning.   (Tr. 382).   Plaintiff was

---

[4]Zyprexa is a psychotropic agent indicated in the treatment of schizophrenia and bipolar disorder.  See Phys. Desk Ref. 1798-99 (60th ed. 2006).

4

interviewed and was administered several tests, including the Halstead Reitan Neuropsychological Battery and Wechsler Adult Intelligence Scale- Third Edition ("WAIS-III"). (Tr.382). The assessment data reflected that plaintiff had a mild degree of neuropsychological impairment that was consistent with his cerebrovascular accident. (Tr. 383). The WAIS-III results indicated a full IQ of 91, which reflects functioning in the average range. (Tr. 383). Plaintiff's Halsted Reitan impairment index was 0.6, which falls in the impaired range. Plaintiff's fine motor speed was moderately to severely impaired. (Tr. 383). Plaintiff's verbal auditory skills and tactile memory were mildly impaired. (Tr. 383-384). However, plaintiff showed strength in basic sensory perceptional skills, including visual perceptual ability and basic receptive language skills. (Tr. 385). Dr. Erker recommended that plaintiff continue medical and psychiatric attention, and rehabilitation therapies. (Tr. 385). It was also recommended that plaintiff not return to competitive employment. (Tr. 387). Dr. Erker suggested that plaintiff should undergo a gradual and transitional return to work with supervision and assistance as needed. (Tr. 387).

In 2003, plaintiff was seen by Ageeb Ahmad, M.D. (Tr. 293). Plaintiff complained of poor memory and concentration. (Tr. 293). Dr. Ahmad diagnosed plaintiff with memory loss, degenerative disc disease, and cardiovascular accident with schizoaffective disorder. (Tr. 293).

Plaintiff was seen by Dr. Ahmad several times in 2004. Dr. Ahmad diagnosed plaintiff with schizoaffective disorder and memory loss. (Tr. 291-292, 288-289). Dr. Ahmad's notes from April 2004 reflect that plaintiff withdrew from school due to problems with his memory. (Tr. 290). When plaintiff saw Dr. Ahmad in October 2004

he reported that he was feeling "ok."  He also reported that he had been laid off and was looking for a new job.  (tr. 288).

In 2004, plaintiff was also seen by Matthew Miriani, M.D.  At the time, plaintiff was in school for computer programing. (Tr. 412).   Dr. Miriani conducted physical examinations throughout 2004. (Tr. 410-412).  Plaintiff's examination results were normal.  (Tr. 410).  However in July 2004, Dr. Miriani noted that plaintiff was obese and did not follow a sensible diet.  (Tr. 410).  Plaintiff reported that he ate at a fast-food restaurant several times a week.  (Tr. 410).

During an evaluation in March 2005, Dr. Miriani noted that plaintiff had a slow but steady gait.  (Tr. 295).  Plaintiff also had slight speech deficiencies and a decrease in his right grip.   (Tr. 295).   In July 2005 plaintiff was doing well and had no complaints.  Dr. Miriani noted that plaintiff had slowed speech, but was otherwise alert and oriented.  (Tr. 404).  Dr. Miriani recommended that plaintiff continue taking Coumadin.  (Tr. 404).  Dr. Miriani's medical reports from November 2005 show an increase in plaintiff's weight.  (Tr. 402).  Dr. Miriani wrote that plaintiff was "not watching his diet whatsoever." (Tr. 402).

During the period February 2005 to November 2005, plaintiff was examined by Dr. Ahmad.  (Tr. 435-438).  In November 2005, Plaintiff reported that he dropped out of school because he was "unable to handle it."  (Tr.  435).  Plaintiff also complained of memory loss and poor concentration in August and March 2005. (Tr. 436-437).  Dr. Ahmad diagnosed plaintiff with schizoaffective disorder.  (Tr. 435-438).

Plaintiff completed a Function Report on November 3, 2005. (Tr. 213-221).  Plaintiff stated that he was capable of driving, performing household chores, washing

6

dishes, paying bills and shopping.  (Tr. 213-221).  Plaintiff also reported that he walks two or three times a week and goes to church once a week.  (Tr. 217).

On January 3, 2006, plaintiff was seen by Dr. Ahmad.  Plaintiff appeared well-groomed and his speech was normal.  (Tr. 434).  Plaintiff did not report any suicidal, homicidal, or psychotic thoughts.  (Tr. 434).  Dr. Ahmad noted that plaintiff's mood was "ok" and diagnosed plaintiff with schizoaffective disorder. (Tr. 434).

On December 12, 2006, Dr. Ahmad completed a physician assessment, which reflected that plaintiff had a stroke in 2001 and a 20-year history of schizophrenia. (Tr. 466).  Plaintiff's psychiatric symptoms were fairly controlled with a GAF of 55. (Tr. 466). Dr. Ahmad found that plaintiff had problems with concentration and immediate memory that was not improved by medication.  Dr. Ahmad opined that because of these problems plaintiff was unable to go to school or hold a job and was forced to drop out of school.  (Tr. 466).

Plaintiff saw Dennis Colbert, M.D. from January 2006 to June 2007.  (Tr. 476-511).  In June 2006, Dr. Colbert reported that plaintiff had not been exercising.  (Tr. 482).   In September 2006, Dr. Colbert reported that plaintiff had joined a gym and was exercising. (Tr. 481).  In December 2006, plaintiff was seen by Dr. Colbert for a broken toe.  (Tr. 479).  Plaintiff was referred for orthopedic examination. (Tr. 479). Dr. Colbert did not make any other specific findings and reported that plaintiff was stable.  (Tr. 476-511).

On January 26, 2006, a physical residual functional capacity (RFC) assessment was completed by K. Kaemmerer, a disability examiner.  (Tr. 446).  Kaemmerer reported that plaintiff was capable of occasionally lifting twenty pounds and frequently lifting at least ten pounds.  (Tr. 440).  Plaintiff was also capable of standing or walking

7

approximately six hours in an 8-hour workday.  (Tr. 440).  Plaintiff showed no visual, communicative, or environmental limitations.  (Tr. 442-443).  Based on these findings and other medical evidence, the examiner concluded that plaintiff retained the ability to perform light activity.  (Tr. 440).  A mental RFC assessment completed on January 26, 2006 showed that plaintiff was moderately limited in the ability to understand and remember very short instructions, carry out detailed instructions, maintain concentration for extended periods, perform activities punctually within a schedule, and complete a workday without interruptions from psychologically-based symptoms.  (Tr. 447).  Plaintiff was not limited in any other areas.  (Tr. 447-448).  The examiner, Dr. McGee, opined that plaintiff retained the ability to perform work related activities in a competitive employment situation.  (Tr. 448).

In 2007, Dr. Ahmad reported that there were no changes in plaintiff's psychological or cognitive condition since his assessment in December, 2006. (Tr. 512).  Plaintiff was examined by Dr. Colbert in September 2007, at which time it was reported that plaintiff was "doing ok."  Plaintiff was not experiencing any new focal weakness or numbness. (Tr. 514).

Plaintiff was seen by Dr. Ahmad several times throughout 2008.  (Tr. 521-524).  Plaintiff reported no complaints and was "feeling ok."  (Tr. 523).  Plaintiff's concentration appeared to be decreased.  (Tr. 521).  However, Dr. Ahmad noted that plaintiff's speech, memory, motor skills, form of thought, and psychosis were all normal.  (Tr. 521-523).  Plaintiff's GAF ranged between 55 and 60 in 2008.  (Tr. 521-524).  Dr. Ahmad diagnosed plaintiff with schizoaffective disorder, obesity, and old cardiovascular accident.  (Tr. 521-524).

8

Dr. Ahmad's medical reports from 2009 reflect a diagnosis of schizoaffective disorder, obesity, vitamin deficiency, and dementia due to the 2001 cardiovascular accident. Plaintiff's GAF decreased to 50. Dr. Ahmad also noted that plaintiff continued to have problems with memory and concentration. He often forgot telephone numbers, burned food, and had difficulty comprehending school material. Dr. Ahmad medical reports also indicates that plaintiff's past conditions of hypertension, stroke, numbness, cognitive deficits, impaired memory, hyperlipidema, congenital heart disease, cardio-metabolic syndrome, and schizophrenia were all stable. (Tr. 702-703). In 2010, Dr. Ahmad noted that plaintiff's GAF had increased to 55 and that his concentration was normal. (Tr. 692).

### IV.  The ALJ's Decision

In the decision issued on July 8, 2010, the ALJ made the following findings:

1. Plaintiff has not met the insured status requirement of the Social Security Act through December 31, 2009.

2. Plaintiff has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq*).

3. Plaintiff has the following server impairments: history of cerebral vascular accident, obesity, and history of schizoaffective disorder (20 C.F.R. 404.1520, and 416.920).

4. Plaintiff does not have an impairment or combination of impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, and 416.920(d), 416.925, and 416.926).

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 415.957(b) except the claimant is limited to only occasional climbing of ramps and stairs and is never able to climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to excessive vibrations of the body and unprotected heights. He must avoid even moderate exposure to other industrial hazards including working in or around dangerous equipment/machinery. The plaintiff is limited to performing only simple one or two step tasks.

9

6. Plaintiff is unable to perform her past relevant work (20 C.F.R. 404.1565 and 416.965).

7. Plaintiff was born on October 9, 1963 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.9653).

8. Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the plaintiff is "not disabled," whether or not the plaintiff has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering plaintiff's age, education, and work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (20 C.F.R. 404.156, 404.1569(a), 416.969, and 416.969(a)).

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2004, through the date of the decision. (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 574-81).

## V. Legal Standard

To be eligible for disability insurance benefits, a claimant must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). "Each step in the disability determination entails a separate analysis and legal standard." Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006).

Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Id.

"Prior to step four, the ALJ must assess the claimant's [RFC], which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation and citation omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002). This evaluation requires that the ALJ consider "(1) the

claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation and citation omitted). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" Id. (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)). After considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). See also 20 C.F.R.

§ 404.1520(f).  If the claimant is prevented by his impairment from doing any other work, the ALJ will find the claimant to be disabled.

The Court must affirm the Commissioner's decision "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion."  Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)).  If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quotations and citation omitted).

## VI.  Discussion

Plaintiff contends that the ALJ erred in determining his RFC and relying on the testimony of the vocational expert.

Based on his review of the medical evidence and assessment of plaintiff's credibility, the ALJ determined that plaintiff has the RFC to perform light work. Plaintiff, however, is limited to only occasional climbing of ramps and stairs and is never able to climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to excessive vibrations of the body and unprotected heights. He must avoid even moderate exposure to other industrial hazards including working in or around dangerous equipment/machinery. The plaintiff is also limited to performing only simple one or two step tasks.

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotations, alteration and citations omitted). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." Id. (citation omitted). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Id. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)). "The need for medical evidence . . . does not require the [Commissioner] to produce additional evidence not already within the record." Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001). The ALJ "is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Id. (quotation and citation omitted).

Plaintiff argues that the ALJ's RFC determination is not supported by some medical evidence. The Court disagrees. Although plaintiff suffers from schizoaffective disorder, medical reports from Dr. Ahmad show that plaintiff's form of thought and psychosis were within the normal range in 2007 and 2008. (Tr. 521, 702). Plaintiff also testified that medication controls his schizoaffective disorder. (Tr. 598). As to plaintiff's cognitive functions, Dr. Ahmad's treatment notes indicate that plaintiff's concentration was normal in 2008 and 2010. (Tr. 522, 692). Additionally, Dr. McGee opined that plaintiff has no significant limitation on his ability to understand and carry out simple job instructions. (Tr. 447). Dr. McGee also concluded that plaintiff retains

14

the ability to perform work related activities in a competitive employment situation. (Tr. 448).  Plaintiff claims that he has numbness on the right side of his body due to his stroke.  However, plaintiff testified that he continued to work for three years after his stroke.  (Tr. 30).  Based on these medical reports, the Court finds that the ALJ did not err in determining plaintiff's RFC.

Plaintiff next argues that the ALJ did not give his treating physician's opinion controlling weight in determining the RFC.  "In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (citations omitted).  The Social Security regulations provide that a treating source's opinion regarding "the nature and severity" of a claimant's condition is entitled to "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ will give controlling weight to the opinion of a treating source if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  Wiese v. Astrue, 552 F.3d 728, 730-31 (8th Cir. 2009); 20 C.F.R. § 404.1572(d)(2).

Dr. Ahmad's medical reports from 2006 indicate that plaintiff's poor memory and concentration prevent him from going to school or obtaining a job.  Ordinarily, the opinion of a treating physician such as Dr. Ahmad is entitled to controlling weight, however, the ALJ discredited Dr. Ahmad's report because it was inconsistent with the medical record.  The Court finds that substantial evidence supports this determination. Dr. Ahmad's treatment notes from 2008 indicate that plaintiff's memory was normal.

15

(Tr. 522).   Also, in 2010, Dr. Ahmad reported that plaintiff's concentration was normal.  (Tr. 692).  Furthermore, Dr. McGee concluded that plaintiff's problems with memory did not hinder his ability to perform work related activities in a competitive employment situation.   (Tr. 448).

Plaintiff asserts that the ALJ's hypothetical question to Mr. Israel, the vocational expert, did not properly capture his impairment of schizophrenia and cardiovascular accident.  Indeed, the ALJ's hypothetical question did not include any limitations based on plaintiff's schizophrenia. However, a hypothetical question to a vocational expert need only include impairments that are supported by the record and which the ALJ accepts as valid.  Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000).  A vocational expert's testimony based on a properly phrased hypothetical constitutes substantial evidence.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999).  The medical record shows that plaintiff's schizoaffective disorder was controlled by medication. (Tr. 598). Plaintiff also has not experienced psychotic thoughts since 2000.  (Tr. 300).  Moreover, the ALJ's hypothetical question did capture plaintiff's memory and concentration impairments that stem from his 2001 stroke.  The ALJ's hypothetical question included limitations for an individual who could only perform one- or two-step tasks.  (Tr. 613). Therefore, the ALJ did not err in questioning the expert.

Plaintiff next argues that the vocational expert failed to reconcile a conflict between his testimony and the Dictionary of Occupational Titles (DOT), as required by SSR 00-4P. Specifically, plaintiff argues that a limitation to a one- or two-step task is inconsistent with a job as a package inspector or an assembler.   The Court disagrees. A job as a package inspector or as an assembler has a reasoning level of 2.  This level is defined as the ability to "[a]pply commonsense understanding to carry out detailed

16

but uninvolved written or oral instructions." DOT Appendix C; <u>Blocker v. Astrue</u>, 2010 WL 5572743 at * 15-16 (E.D. Mo. Dec. 13, 2010).  A job with a reasoning level of 2 is not inconsistent with a job requiring a one- or two-step instruction.  <u>Blocker</u>, 2010 WL 5572743 at *16.

### VII.  Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole.  Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [Doc. #20] is **denied**.

A separate judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2012.